## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| HIPAALINE, LTD, | ) | Case No. 21-2837 |
| a Limited Company of England and Wales, | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| Debtor. | ) | |

### DECLARATION OF NICHOLAS SIMMONDS
### PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT
### OF THE CHAPTER 15 PETITION FOR RECOGNITION

Nicholas Simmonds, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States of America as follows:

1.      I am a resident of England and employed as an insolvency practitioner at Quantuma Advisory Limited.  I have, together with Christopher Richard Newell, also of Quantuma Advisory Limited, been duly appointed as the joint administrator in the insolvency proceeding (the "England & Wales Proceeding") of Hipaaline Ltd (the "Debtor") in accordance with the requirements of rule 3.25 of the Insolvency (England and Wales) Rules 2016 and paragraph 29 of Schedule B1 to the Insolvency Act 1986 ("England & Wales Insolvency Act").

2.      I have personal knowledge of some of the facts set forth herein.  Where I do not have personal knowledge of the facts set forth herein they are based upon my investigations and enquiries of Emily Arida Fisher, the sole director of the Debtor.  While the said facts are true so far as I am presently reasonably able to ascertain, my investigations and enquiries are ongoing and so my understanding of some of the facts and information provided may change in due course.

3.      I am authorized to act on behalf of the joint administrators of Hipaaline Ltd and I submit this Declaration in support of the petition for recognition of the England & Wales Proceeding as a foreign main proceeding [Docket No. 1].

4.      On February 24, 2021 Emily Arida Fisher, the sole director of the Debtor, pursuant to a Written Resolution of the same date, placed the Debtor into administration in accordance with paragraph 22(2) of Schedule B1 of the England & Wales Insolvency Act and, also on that same date, Christopher Richard Newell and I were appointed as the joint administrators of the Debtor pursuant to the England & Wales Insolvency Act (the "Notice of Appointment"). A copy of the Notice of Appointment of an Administrator by the Directors of a Company that was filed with the England & Wales Court on February 24, 2021 is attached hereto as Exhibit A.

5.      The Debtor's England & Wales Proceeding is before the High Court of Justice with assigned case no. CR 2021-000347 (the "England & Wales Court").

6.      So far as I am aware the Debtor operated as a provider of marketing and consulting services for US based medical practices, including a software platform which facilitated virtual visits over the internet. I understand that the Debtor operates remotely and has no operating premises.

7.      As of the date of my appointment as joint administrator I, together with Christopher Richard Newell, act as agent of the Debtor and have primary responsibility for managing the Debtor's affairs, realizing assets, adjudicating on the claims of creditors and distributing realizations to them, as well as investigating the conduct of the sole director of the Debtor and taking various ancillary actions. The England & Wales Insolvency Act provides, among other things, for a formal process for creditors to make their claims, for them to be adjudicated and then for distributions (if any) to be made to them.

8.    Given the nature of the Debtor's business, I understand that its principal assets are located in England & Wales.  On February 24, 2021 the Debtor, acting by me and Christopher Richard Newell as its agents, sold certain assets, consisting of associated goodwill and intellectual property, to Online MD Ltd for £100,000 pounds sterling.  A copy of the joint Administrators' 'Pre Pack Sale Disclosure', a document sent to creditors of the Debtor, is attached hereto as Exhibit B. That document is prepared and sent in accordance with good practice, and various compliance standards and essential procedures applicable to insolvency practitioners and sets forth the factual background to the administration and the basis for the sale.

9.    Prior to the initiation of the England & Wales Proceeding, a lawsuit was initiated against the Debtor (and its sole director) in the United States District Court for the Northern District of Illinois more commonly known as *GCM Partners, LLC v. Hipaaline Ltd. And Emily Aria Fisher*, Case No. 20-cv-06401 (the "US Lawsuit").  The US Lawsuit and the litigation fees and costs associated with the same were, so far as I am presently able to ascertain, factors contributing to the insolvency of the Debtor.

10.    The filing of the Chapter 15 proceeding is necessary because the Plaintiff in the US Lawsuit has challenged the legitimacy of the England & Wales Proceeding and refuses to stay the US Lawsuit as it relates to the Debtor.

11.    I have identified (i) all foreign proceedings (as defined by section 101(23) of Title 11 of the United States Bankruptcy Code)  with respect to the Debtor that are known to me, (ii) the names and addresses of (a) all  administrators in the Debtor's foreign proceedings and (b) all parties to any litigation currently pending in the United States to which the Debtor is a party, and (iii) a list of all US creditors of the Debtor with current claim amounts, showing the amounts.  See, Exhibit C.

12.    All known creditors of the Debtor, including the US creditors, have been sent (1)

notice of the England & Wales Proceeding, (2) a proof of claim form, (3)  information on how to

submit their proof of claim form, and (4) other necessary details to  assist them to meaningfully

participate in the England & Wales Proceeding.

I state under penalty of perjury, under the laws of the United States of America, pursuant 28 U.S.C.

§1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 8, 2021

_____

Nicholas Simmonds, Joint Administrator

Rule 3.25 Insolvency (England and Wales) Rules 2016

**NOTICE OF APPOINTMENT OF AN ADMINISTRATOR BY THE DIRECTORS OF A COMPANY (WHERE A NOTICE OF INTENTION TO APPOINT HAS NOT BEEN GIVEN)**

in relation to **HIPAALINE LTD**[1]

(Company number **12665260**[2]) ('the Company')

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

INSOLVENCY AND COMPANIES COURT (ChD)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

Court case number:

_____
____

**This notice of appointment of an administrator is made in accordance with the requirements of rule 3.25 of the Insolvency (England and Wales) Rules 2016 (IR 2016) and paragraph 29 of Schedule B1 to the Insolvency Act 1986 (respectively Schedule B1 and IA 1986). References in this notice to rules and sections are, unless expressly provided otherwise, respectively references to rules of the IR 2016 and to sections of the IA 1986.**

1.  The director of the Company ("the Appointer") gives notice that **NICHOLAS CHARLES SIMMONDS** and **CHRIS NEWELL** of Quantuma Advisory Limited, High Holborn House, 52-54 High Holborn, London, England, WC1V 6RL[3] be appointed as joint administrators of the Company.

2.  The Administrators' consents to act accompanies this notice.

3.  The Appointer is entitled to make an appointment under paragraph 22 of Schedule B1 of the Insolvency Act 1986 ("**IA 1986**").

4.  The appointment of the Administrators is in accordance with Schedule B1 of the IA 1986.

5.  The Company has not within the preceding 12 months been:

    (i)   in administration;
    (ii)  the subject of a moratorium under Schedule A1 of the IA 1986 which ended when no company voluntary arrangement ("CVA") was in force; or

_____

[1] Company's registered name

[2] Company's registered number if incorporated in England and Wales under the Companies Acts

[3] Name and address of administrator(s)

E× A

(iii)   the subject of a CVA which was made during a moratorium under Schedule A1 of the IA 1986 which ended prematurely within the meaning of section 7B of the IA 1986.

6.   In relation to the Company there is no:

(i)    petition for winding up which has been presented but not yet disposed of;
(ii)   administration application which has not yet been disposed of; or
(iii)  administrative receiver in office.

7.   The Company is not an insurance undertaking, credit institution, an investment undertaking providing services involving the holding of funds or securities for third parties or a collective investment undertaking under Article 1.2 of the EC Regulation.

8.   The proceedings flowing from the appointment, so far as the EC Regulation has effected the laws of the United Kingdom, will be COMI proceedings for the following reasons: The Company's registered office and principle place of business carried out by its sole director is in England and there is no evidence to rebut the presumption that the centre of main interest lies within this jurisdiction.

9.   For the purposes of paragraph 100(2) of Schedule B1 of the IA 1986 the administrators may exercise any of the powers conferred on them by the IA 1986 jointly or individually.

10.  Attached to this notice is a record of the decision of the sole director to appoint the Administrators.

11.  The Administrators' appointment is made on and is effective from the date and time that this notice and accompanying documents are filed at court and the requirements of paragraph 29 of Schedule B1 to the IA 1986 are complied with as endorsed by the court on this form.

-------------------------------------------------------------------------

I, **Emily Arida Fisher** of 20-22 Wenlock Road, Lonron, England, N1 7GU[4] (director) do solemnly and sincerely declare that the information provided in this notice and the statements made and information given are, to the best of my knowledge and belief, true,

**AND I make this solemn declaration conscientiously believing the same to be true and by virtue of the provisions of the Statutory Declarations Act 1835.**

Declared by video conference in the presence of  Alistair Martin BACON

Signed *Emily Fisher*

This                            23rd    day of February 2021

before me          Alistair Martin BACON
_____    SOLICITOR.

AMB Law   Limited
46 New Broad Street
London EC2M 1JH

I,   Alistair BACON      , confirm that I was able to see and hear Emily Arida Fisher via video conference when he was signing the declaration and that there were no technological issues with the video conference that impeded this.

A Commissioner for Oaths or Notary Public or Justice of the Peace or Solicitor or Duly Authorised Officer.

| Endorsement to be completed by Court |
| --- |
| This notice was filed on ([7]) ..................................... at ([8])........................ |

Alistair Martin BACON

Rule 3.2 Insolvency (England and Wales) Rules 2016

## PROPOSED ADMINISTRATOR'S STATEMENT AND CONSENT TO ACT

in relation to **HIPAALINE LTD**

(Company number **12665260**) ('the Company')

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

INSOLVENCY AND COMPANIES COURT (ChD)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

Court case number:

---------------------------------------------------------------------------------

**This statement and consent to act is made in accordance with the requirements of rule 3.2 of the Insolvency (England and Wales) Rules 2016 (IR 2016) and Schedule B1 of the Insolvency Act 1986 (respectively, Schedule B1 and IA 1986).**

1.  I, **NICHOLAS CHARLES SIMMONDS** of Quantuma Advisory Limited, High Holborn House, 52-54 High Holborn, London, England, WC1V 6RL certify that I am qualified to act as an insolvency practitioner in relation to the Company.

2.  My Insolvency Practitioner number is **9570**.

3.  The name of the relevant Recognised Professional body which is the source of my authorisation to act in relation to the Company: **Insolvency Practitioners Association**.

4.  I consent to act as an administrator of the Company.

5.  I have not had a prior professional relationship with the Company.

6.  The person by whom the appointment is to be made, by a Notice of Appointment, is Emily Arida Fisher who is the sole director of the Company.

7.  I am of the opinion that the purpose of the administration is reasonably likely to be achieved in this particular case.

Signed:

Full name: Nicholas Charles Simmonds

Date:    22 February 2021

Rule 3.2 Insolvency (England and Wales) Rules 2016

## PROPOSED ADMINISTRATOR'S STATEMENT AND CONSENT TO ACT

in relation to **HIPAALINE LTD**[1]

(Company number **12665260**[2]) ('the Company')

IN THE HIGH COURT OF JUSTICE

BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

INSOLVENCY AND COMPANIES COURT (ChD)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

Court case number:

----------------------------------------------------------------------

**This statement and consent to act is made in accordance with the requirements of rule 3.2 of the Insolvency (England and Wales) Rules 2016 (IR 2016) and Schedule B1 of the Insolvency Act 1986 (respectively, Schedule B1 and IA 1986).**

1.  I, **CHRIS NEWELL** of Quantuma Advisory Limited, High Holborn House, 52-54 High Holborn, London, England, WC1V 6RL [3] certify that I am qualified to act as an insolvency practitioner in relation to the Company.

2.  My Insolvency Practitioner number is **13690** [4].

3.  The name of the relevant Recognised Professional body which is the source of my authorisation to act in relation to the Company: **Insolvency Practitioners Association** [5].

4.  I consent to act as an administrator of the Company[6].

5.  I have not had a prior professional relationship with the Company[7].

6.  The person by whom the appointment is to be made, by a Notice of Appointment, is Emily Arida Fisher who is the sole director of the Company.

7.  I am of the opinion that the purpose of the administration is reasonably likely to be achieved in this particular case.

Signed:

Full name: Chris Newell

Date:     22 February 2021

------------------------

[1] Company's registered name
[2] Company's registered number if incorporated in England and Wales under the Companies Acts
[3] Insert full name of proposed administrator
[4] Insert IP number
[5] Insert RPB
[6] Insert name of person(s) appointing
[7] Insert short summary of relationship if applicable

**HIPAALINE LTD ("the Company")**
**Company Number: 12665260**

A Written Resolution of sole director of the Company dated 22 February 2021

| | | |
|---|---|---|
| **Director:** | **Emily Arida Fisher** | **("EAF")** |

**1.    Quorum**

EAF noted paragraph 7(2) of the model articles permitted a single director to take decisions and therefore a quorum was present.

**2.    Declaration of interests**

EAF declared generally her interests in the matters to be considered in accordance with section 177 of the Companies Act 2006 ("**the CA 2006**").

**3.    Matters arising**

EAF considered her general duties as the sole director of the Company, in particular under the CA 2006 and the Insolvency Act 1986, ("**the IA 1986**") and notes the following:

(a)    the Company's financial position;

(b)    that the Company was insolvent and no longer able to pay its debts as and when they fall due;

(c)    that the Company is not in liquidation; and

(d)    that EAF was not prevented from making an appointment of administrators pursuant to paragraph 22(2) of Schedule B1 of the IA 1986 by virtue of any restrictions contained in paragraphs 23 to 25 of Schedule B1 of the IA 1986 and in particular that EAF was not aware of any winding up petition having been presented against the Company or any impediment under the Company's Articles of Association.

**4.    Resolutions**

Accordingly, **IT WAS RESOLVED** as follows:

(a)    that the Company cannot by reason of its liabilities continue its business;

(b)    that it is advisable to place the Company into Administration pursuant to paragraph 22(2) of Schedule B1 of the IA 1986 as soon as possible;

(c)    that Nicholas Charles Simmonds ("**NCS**") and Chris Newell ("**CN**") of Quantuma Advisory Limited, High Holborn House, 52-54 High Holborn, London, England, WC1V 6RL,  licensed insolvency practitioners, have agreed in principle to act as joint administrators of the Company.

(d)   that subject to NCS and CN consenting to act as Administrators of the Company, that Notice of Appointment in the form required by rule 3.25 of the Insolvency (England & Wales) Rules 2016 be sworn by EAF and filed at the appropriate Court forthwith; and

(e)   NCS and CN should be appointed as administrators of the Company pursuant to Schedule B1 of the IA 1986 with effect from the moment it is filed with the Court.

*Emily Fisher*
..............................
**Emily Arida Fisher**

**High Court of Justice Chancery Division Court**          **No. 000347 of 2021**

**Hipaaline Ltd**
**In Administration**

# PRE PACK SALE DISCLOSURE

**Nicholas Simmonds and Chris Newell**
**Joint Administrators**

**Quantuma Advisory Limited**

**1st floor, 21 Station Road, Watford, Herts, WD17 1AP**

**01923 954170**

Ex B

In accordance with SIP16, I provide details regarding the sale of the Company's business and assets ("the Sale") and the events leading up to the Sale.

The Company's business and assets have been sold following a pre-packaged sale. The primary function of an administrator is to achieve one of the objectives set out in the Insolvency Act. In this case, the statutory purpose pursued is to achieve a better result for the Company's creditors as a whole than would be likely if the Company were wound up without first being in Administration. This transaction enables the statutory purpose to be achieved and in my view the outcome achieved was the best available outcome for creditors as a whole in all the circumstances. I provide below an explanation and justification of why a pre-packaged sale was undertaken.

### The Roles of the Insolvency Practitioners

Prior to commencement of the Administration, Quantuma Advisory Limited acted as advisors to the director in relation to the options available to the Company. For the avoidance of doubt, neither Quantuma Advisory Limited nor its insolvency practitioners advised the directors personally or any parties connected with the purchaser, who were encouraged to take independent advice. At all times prior to Administration, the director remained responsible for and in control of the Company's affairs.

During this time, the insolvency practitioners of Quantuma Advisory Limited took their own steps to prepare for their potential appointment as Joint Administrators. At this point, there were clear advantages in looking to sell the Company's business and assets swiftly on appointment, as this strategy would significantly reduce the ongoing costs of securing and maintaining the business and assets and, it would avoid the substantial risks that the value and continued viability of the business and assets would deteriorate due to the commencement of a formal insolvency regime. Therefore, the insolvency practitioners, with the assistance of professional and independent agents, considered the most effective method of securing a sale representing the best outcome for creditors as a whole and negotiated with parties interested in acquiring the business and assets of the Company to a point whereby a sale could be concluded shortly after the Administration had commenced.

Immediately on their appointment, the Joint Administrators, as officers of the court and as agents of the Company, took over from the Board the responsibilities of managing the affairs, business of the Company. In the interests of the creditors as a whole and mindful of the need to achieve a statutory purpose of an Administration, they concluded the Sale.

Insolvency practitioners are bound by the Insolvency Code of Ethics when carrying out all professional work relating to an insolvency appointment. The Joint Administrators observed the Code in all their activities both prior to and after their appointment.

### Initial Introductions

The Company's director was referred to Quantuma Advisory Limited by Mr Ian Swycher, the Company's Accountant, on 21st December 2020 to provide adhoc help and advise on the options available for the Company, as it was deemed to be insolvent or rapidly approaching insolvency.

### Pre-appointment Matters

In addition to advising on the Company's options, our advice covered the issues surrounding title to the assets and understanding a valuation of the assets of the business. Additionally we were involved with negotiating and, agreeing the sales contract to be completed following the Joint Administrators' appointment. The fee agreed in respect of my pre-appointment advice was the time costs properly incurred, by staff at Quantuma Advisory Limited's standard charge out rates estimated to total the sum of £10,000 plus VAT and disbursements. The Joint Administrators intend to seek to have these fees approved and paid from the insolvent estate in due course.

A signed engagement letter was received from the director of the Company on 19 February 2021.

**Company background**

The Company operates as a provider of marketing and consulting services for a US based medical practices, including provision of a software platform which facilities virtual patient visits over the internet.

The Company operates remotely and as such, there are no operating/trading premises.

The director explained that the Company had become insolvent due to the following factors:-

In December 2017 the director, Ms Fisher personally commissioned the development of the 'Telehealth' software which took eighteen months in total to build. The Company has met the costs of developing the platform since June 2020.

The director has provided a copy of the agreement with the developer which suggested her ownership of the domain www.leafwell.co and the associated software system. The use of the domain name and the software was licensed to the Company by Ms Fisher on a non-exclusive agreement.

Prior to the incorporation of the Company, the business which commenced to trade in January 2019, was operated by Ms Fisher through a US registered Company called 'Hipaaline Inc'. Upon the outbreak of the global Covid-19 pandemic and the subsequent travel ban to the US, the operations of the business were initially taken over by an associated company known as Hipaaline LLC, based in the UK, and then later by the Company which was formally incorporated in June 2020.

It should be noted that between 24 November and 9 December 2020, the Company was called 'Online MD Limited' before reverting back to Hipaaline Ltd.

Soon after the incorporation of the Company, a contract was entered into with a third party LLC, a company based in the US, which gave them exclusive rights to provide the doctors who work on the Company's website platform to consult with patients.

The director has explained that shortly after the commencement of the contract, the US trading partner refused to pay the Company's full invoiced amounts, insisting that only a lower, flat rate was due.

Consequently in October 2020, the Company sent a letter to the US trading partner giving notice to terminate the contract which prompted the US trading partner to file an emergency Temporary Restraining Order (TRO) under the law of the US State of Illinois, the equivalent of a mandatory injunction in the UK. The TRO requires the Company to keep providing the services under the contract notwithstanding that the failure to pay the full amount under the contract would give rise to the Company trading at a loss.

We are advised that the Company unsuccessfully opposed the making of the TRO and has so far incurred legal costs in the US in excess of $100K in the last two to three months.

The director has informed us that, as a result of the above, the Company was no longer viable on the following basis:

- It could not continue to meet the legal fees associated with the continued litigation against the US trading partner; and,
- The sporadic nature of the commission payments from the third party meant that the Company's cash flow was severely compromised.

The director has suggested that the US trading partner has continued not to pay invoices in full and in some instances, not to have paid the invoices at all, resulting in the Company being owed nearly $300K (USD) in unpaid invoices. The unpaid invoices together with the burden of the ongoing legal fees, now totalling almost $200K (USD) have caused the Company to become insolvent.

The director of the Company maintains that efforts to negotiate with the US trading partner, including a four-hour mediation have occurred but have been unsuccessful which ultimately resulted in no resolution to the dispute being achieved.

Given the circumstances it became apparent to the director that the Company required funding above the level available and the director was left with no alternative option other than to seek the advice of an insolvency practitioner. As mentioned above initial conversations regarding the options available to the Company were discussed just prior to the festive season break and continued mid to late January 2021. Formal instruction to progress with a formal insolvency process were given on 2 February 2021 to Quantuma Advisory Limited.  Options discussed in this period and were considered are listed below:-

### Continuing to trade outside insolvency

The Company had exhausted its available cash resources and its cash constraints were impacting on its ability to continue trading.

The Company's shareholders and bank confirmed that they were not able to provide the level of additional funding necessary to support the Company to trade, and therefore this option was not viable especially given the ongoing costs of the US litigation and the adhoc nature of the commission payments.

### Company Voluntary Arrangement ("CVA")

Although a CVA would have given the Company some immediate relief from creditor pressure, without securing additional funding, the directors were not confident that the Company would be successful in trading through its difficulties.

The CVA proposal, which would need to include contingent creditors was considered not to be a viable option in the light of the dispute with the US trading partner which appears to impact the future viability of the business.

### Liquidation

The possibility of placing the Company into Liquidation was considered.  However it was concluded that this was not the best course of action to take, as Liquidation would not allow continuity of trade and this continuity would adversely affect the realisation of the available assets.

### Pre-packaged Administration Sale

Given that it appeared that there was insufficient working capital and no prospect of persuading new funding to allow short to medium-term trading to continue a pre-packed sale, transferring employees and certain assets was considered to be the best option.

### Secured Creditors

It should be noted that the Company has granted no security.

### The Joint Administrators' Options on Appointment

Immediately prior to appointment, the proposed Joint Administrators had considered whether the first Administration purpose might be achieved by continuing to trade the business within Administration in order that a proposal for a CVA might be put to creditors.  However, it was considered that trading the business during the Administration could not continue, as the Company had insufficient finance in order to do so and it was not clear that the business would trade profitably. Additionally it was unclear as to whether the CVA would be workable without fundamental changes to the business model, nor was it clear as to whether a CVA would be acceptable to creditors, especially given the ongoing dispute with the US trading partner.  For these reasons, the then proposed Joint Administrators considered it would *not* be in the interests of creditors as a whole to continue to trade the business in Administration in the short term with a view to exploring whether the existing offer for the purchase of the business and assets could be improved upon

As mentioned earlier in this disclosure it was appropriate to consider title to both the URL address/domain www.Leafwell.co (the 'domain') and the proprietary 'Telehealth' software system (the 'software').

Messer's Veale Wasbrough Vizards LLP (VWV) were instructed to review and consider the position and to provide their opinion as to the ownership of these two assets. Following their review, VWV were satisfied that, on balance, the Company did not own either of these assets and as a result they could not be realised by the Administrator.

Given the advice that the then proposed Administrator had received, i.e. that the Company did not have good title to these two fundamental assets, it was evident that the business would have little or no value to a third party. Therefore, in order to preserve the value of the limited remaining assets of the business they were sold to Online MD Limited.

**Marketing of the Business and Assets**

The director was asked to advise if any marketing had been conducted by the Company prior to approaching Quantuma Advisory Limited for advice and we were advised that none had been undertaken by the Company.

***The Marketing Strategy***

No marketing of the business and assets was undertaken. As outlined above it was established that the ownership of the domain and the software was not with the Company and as a result they could not be sold. This left very limited assets available for sale.

Given the exclusion of these assets from any sale, opinions were obtained from two independent valuation agents as to the value of the remaining assets. It being pertinent to note that the remaining assets would have little value to any party that did not own the domain or the software. A prompt sale was achieved maximising the value of the assets. The value reflected the ability for the purchaser to continue to trade the business and assets.

**Valuation of the Business and Assets**

In order to obtain a fair market value of the assets, as mentioned above, two independent firms, Richard Birch & Co and, Axia Valuation Services, were instructed on 10 February 2021 to value the business and assets of the Company. Both valuation agents confirmed their independence, and have adequate professional indemnity insurance.

Their valuations were received on 16th and 18th February 2021 and suggested that the assets available for sale of a going concern basis had an estimated value of between £75,000 and £129,000. The assets were valued at £nil on a break up basis.

Given the circumstances the sale price of £100,000 achieved for the assets, has been recommended by both of the agents

**The Transaction**

***The purchaser and related parties***

A sale of the business and assets was completed on 24 February 2021 to Online MD Limited.

Ms Fisher, who is the director of the insolvent Company, is also the director and shareholder of Online MD Limited. Ms Fisher has provided a personal guarantee in respect of the deferred consideration.

No guarantees have been given by any directors for amounts due from the insolvent Company to a prior financier.

***The assets***

The Sale is for limited assets of the Company being the associated goodwill and Intellectual Property.

I have summarised below assets that have not been sold.

### *The sale consideration*

The sale consideration totalled £100,000 and required £20,000 to be paid on completion. I can confirm that this has been paid. The balance is deferred and is to be paid in equal instalments, the last instalment being December 2021.

The assets sold were limited to those actually owned by the Company and, for the reasons set out above, specifically excluded the domain and the telehealth software assets (among others including the database of clients).

There were was one employee of the company being the director, Ms Fisher, and her employment was transferred as part of the Sale to the purchaser.

The business and assets sold as the sale agreement were secured by obtaining a personal guarantee from the purchaser's director, Ms Fisher.

### Connected Party Transactions

### *Pre-pack pool*

The pre-pack pool is an independent body that has been formed to increase the transparency of the pre-pack process in cases involving connected parties and to provide assurance for creditors that independent business experts have reviewed proposed pre-pack sales to connected parties. Information on the pre-pack pool may be found at https://www.prepackpool.co.uk.

As is required, the Joint Administrators brought the pre-pack pool to the attention of the of the director, Ms Fisher in their engagement letter and Online MD Limited  made an application to the pre-pack pool for approval of the them proposed transaction.

That approval was forthcoming and the pre-pack pool decision dated 19 February 2021 is attached.

### *Viability statement*

The Joint Administrators requested a viability statement from Online MD Limited however this has not been provided.

### OTHER MATTERS

"A Creditors' Guide to Administrators' Fees" effective from 6 April 2017 is available to download at http://www.quantuma.com/guide/creditors-guide-fees.  Should you require a paper copy, please send your request in writing to the Joint Administrators. A copy will be provided at no cost.

Should you wish to know more about the insolvency process in general, I recommend that you visit www.creditorinsolvencyguide.co.uk.

# OPINION ON PROPOSED PRE-PACKAGED SALE INVOLVING:

HIPAALINE LTD AND Emily Fisher (Online MD Ltd)

This opinion has been given by me in accordance with the request made by Emily Fisher to Pre Pack Pool Ltd.
Emily Fisher is a connected party to HIPAALINE LTD because they were a director, shadow director or company
officer of HIPAALINE LTD who is or will become a director, shadow director or company officer of Online MD Ltd.

I have reviewed the evidence provided by Emily Fisher. This consists of:

1. Summary of Events
2. Evidence of IP ownership
3. Original receipt for URL purchase

In undertaking my review I have relied on the information and evidence provided by Emily Fisher and have not
undertaken a detailed audit or verification of the information or evidence provided.

For the avoidance of doubt, I express no opinion on whether Online MD Ltd is, or will in the future remain a going
concern. This is a matter for Emily Fisher. Neither do I express an opinion on any decision of the administrator of
HIPAALINE LTD to enter into a pre-packaged sale. This is a matter for the administrator.

The administrator's duties relate to HIPAALINE LTD and its creditors, not to Online MD Ltd or its creditors or future
creditors (or any other person). The administrator's duties are not affected by this opinion.

The request for an opinion is voluntary and no liability attaches to me or to Pre Pack Pool Ltd as a result of this
opinion.

I confirm that I have no personal, professional or other relationship with any party connected to HIPAALINE LTD or
Online MD Ltd, and that no relationship, bias or ethical conflict exists which prevents me from evaluating this
application solely on its merits.

## Opinion

Based on my review, I have not found anything to suggest that the grounds for the proposed pre-packaged sale
outlined in the application are unreasonable.

Colin Coghlan

19-02-2021

## Exhibit C

### 11 U.S.C. § 1515 Information

**1.      All foreign proceedings (as defined by section 101(23) of Title 11 of the United States   Bankruptcy Code) with respect to the Debtor that are known to the Foreign Representative**

Hipaaline Ltd (Company number 12665260), pending before the High Court of Justice, The Business & Property Courts of England and Wales, Case No. CR 2021-000347

**2.      The names and addresses of all administrators in the Debtor's foreign proceedings**

Nicholas Simmonds
Chris Newell
Quantuma Advisory Limited
21 Station Road, 1st Floor
Watford, Herts WD17 1 AP

**3.      The names and addresses of all parties to any litigation currently pending in the United  States to which the Debtor is a party**

A.      GMC Partners, LLC
c/o Trisha Michelle Rich
Holland and Knight, LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
Email: trisha.rich@hklaw.com

B.      Emily Fisher:
c/o Martin B. Carroll
Fox, Swibel, Levin & Carroll, LLP
200 West Madison Street
Suite 3000
Chicago, IL 60606
Email: mcarroll@fslc.com

**3,      A list of all U.S. creditors with current proven claim amounts**

| Creditor | Amount of Claim |
|---|---|
| GMC Partners, LLC<br>c/o Trisha Michelle Rich<br>Holland and Knight, LLP<br>150 N. Riverside Plaza, Suite 2700<br>Chicago, IL 60606 | Unknown – not proven<br>(contingent, unliquidated & disputed) |

Ex C.

| | |
|---|---|
| Bayou Technologies<br>3010 Ryan Street<br>Lake Charles, LA 70601 | £1,612.63 - Not proven |
| Diana Cammack Follete<br>P.O. Box 12<br>Pahoa, HI 96778 | £3,918.16 - Not proven |
| Ghost Management<br>41 Discovery<br>Irvine, California 92618 | £70.80 – Not proved |
| Hub Spot Inc.<br>25 First Street, 2nd Floor<br>Cambridge, MA 02141 | £18.17 - Not proven |
| Joe Evans<br>824 North Bromley Avenue<br>Scanton, PA 18504 | £440.00 - Not proven |
| Nadir Pearson<br>893 Van Houten<br>Clifton, NJ 07013 | £1,630.35 - Not proven |
| Newdelz LLC<br>360 Central Avenue, Suite 800<br>St. Petersburg, Florida 33701 | £1,701.24 - Not proven |
| PGED Corp<br>2590 Walnut Street, Suite 46<br>Denver, Colorado 80205 | £1,839.46 - Not proven |
| Ryan Schefdore<br>12166 Sussex Street<br>Fort Myers, Florida 33913 | £4,394.86 - Not proven |
| Schneps Media LLC<br>P.O. Box 610257<br>Bayside, New York 11361 | £637.96 - Not proven |
| Semrush Inc<br>800 Boylston Street, Suite 2475<br>Boston, MA 02199 | £1473.36 - Not proven |
| Sendgrid<br>375 Beale Street, 3rd Floor<br>San Francisco, CA 94105 | £10.60 - Not proven |

Slack Technologies                          £139.20 - Not proven
500 Howard Street
San Francisco, California 94105

The Schadick Law Firm                       £108.40 - Not proven
2000 Auburn Drive, Suite 200
Beachwood, Ohio 44122

Twillo Send Grid                            £10.60 - Not proven
375 Beale Street, Suite 300
San Francisco, California 94105

Vonage                                      £30.43 - Not proven
Nexmo, Inc.
P.O. Box 102237
Pasadena, California 91189-2237

Shannon Goodwin                             £1,971.00 – Not proven
785 Oakleaf Plantation Pkway
Unit 1833
Orange Park
FL 32065

Jessica Golub                               £2,407.00 – Not proven
207 W Tienken Road,
Rochester Hills,
MI 48306

Erin Jamari                                 £2,050 – Not proven
2579 Old Quarry Rd
Unit 2337
San Diego, CA 92108

Allan MacDonnel                             £679.00 – Not proven
2675 Hollyridge Drive
Los Angeles
CA 90068

Julia Granowicz                             £429.00 – Not proven
4420 87th Street Ct W
Bradenton
FL, 3410

Elizabeth Udell                             £321.00 – Not proven
966 S St. Andrews Pl,
Apt. 104,
Los Angeles, CA 90019

Anthony
1563 Mission Springs Cir
San Jose,
CA 95131, USA

£2,857.00 – Not proven